IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRIST OF MARYLAND
*Northern Division*

| | |
|---|---|
| WENDY TRICE<br>462 Mainview Ct.<br>Glen Burnie, MD 21061<br><br>　　　　　Plaintiff,<br>　v.<br><br>OLIVERI & ASSOCIATES, LLC<br>635 Bestgate Rd., Suite 200<br>Annapolis, MD 21401<br><br>　　　　　Defendant. | Civil Action No.:  1:19-cv-3272<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1.　　Defendant Oliveri & Associates LLC has engaged in a campaign of more than a decade to capitalize on any misstep in payment of condominium assessments, in violation of the Fair Debt Collection Practices Act, the Maryland Consumer Debt Collection Act, and Maryland common law.

## PARTIES

2.　　Plaintiff Wendy Trice ("Plaintiff") is, and at all times pertinent herein, a natural person residing at 462 Mainview Ct., Glen Burnie, Maryland, 20161.

3.　　Oliveri & Associates , LLC ("Oliveri" or "Defendant") is a Maryland limited liability corporation with its primary place of business at 635 Bestgate Road, Suite 200, Annapolis, Maryland 21401.

1

4. Oliveri lists "collections" as a primary area of practice on his website and is licensed as a collection agency by the State of Maryland. *See* http://www.oliveriandassociates.com/ (last visited Nov. 1, 2019).

5. Oliveri regularly collects debts on behalf of other entities and is therefore a debt collector as that term is defined in 15 U.S.C. § 1692a(6) and a "collector" as that term is defined in Md. Code Ann., Comm. Law § 14-201(b).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District because the acts and transactions occurred here.

## FACTS

**Purchase of the Condominium and Wrongful Imposition of Towing Fees**

8. In or around May 2007, Plaintiff purchased a condominium located at 462 Mainview Court, Glen Burnie, Maryland (the "Condominium").

9. The Condominium is part of the Elvaton Towne Condominium Regime II ("Elvaton").

10. Plaintiff regularly and timely paid monthly condominium assessments ("Assessments").

11. In or around August 2008, Elvaton wrongfully towed Plaintiff's vehicle from the community's parking area.

12. Elvaton further wrongfully caused Plaintiff to incur approximately $200 for the costs of towing. *Elvaton Towne Condo. Regime II, Inc. v. Rose*, 453 Md. 684, 162 A.3d 1027 (2017).

13. Due to the expense of the unlawful towing fees, Plaintiff was unable to pay her monthly assessment in that month.

14. Oliveri began attempting to collect from Plaintiff in or around December 2008, claiming she owed more than $1,000, though the condominium had told her earlier that same month that she only owed $180.

### Decade of Unlawful Collection by Oliveri

15. Oliveri began regularly charging fees to Plaintiff as early as January 2009, with an initial charge of $951.87.

16. Over the next several years, Oliveri repeatedly agreed to payment plans with Plaintiff for a sum certain, inclusive of the assessments that were accruing during the payment period.

17. Notwithstanding Plaintiff's many attempts to bring herself current, upon full payment of the agreed amount, Oliveri continued to demand thousands more in payment.

18. On one occasion, Plaintiff physically provided a check to Oliveri in the amount quoted, only to have him demand additional money thereafter.

19. Likewise, though Elvaton's records at times showed Plaintiff as current, or nearly so, Oliveri continued to maintain that Plaintiff had outstanding balances in the thousands of dollars.

20. Oliveri regularly waited at least a month between receiving Plaintiff's payments and conveying them to Elvaton, and did not always credit Plaintiff for the full amount she had paid.

21. Oliveri's bills to Plaintiff included thousands in attorney's fees, in addition to separate "costs of collection" exceeding $1,000, as well as interest, late fees, and other charges.

22. Oliveri also charged Plaintiff insufficient funds fees, though no check was rejected by Plaintiff's bank, and she maintains overdraft protection to prevent such an occurrence.

23. Oliveri applied Plaintiff's payments to these fees and charges before applying them to any assessments, resulting in mounting late fees, interest, and other charges.

24. Plaintiff was not permitted to make assessment payments directly to Elvaton from the time Oliveri began collection through the time of filing.

25. Between July 2008 and the time of filing, Plaintiff's assessments totaled approximately $35,000, while her actual payments, through Oliveri, totaled nearly $50,000.

26. Indeed, from in or around January 2009, Plaintiff was required to make all payments to Elvaton through Oliveri, resulting in perpetual legal fees for the purported cost of processing those payments.

27. The legal fees ultimately dwarfed any delinquent Assessments.

28. Plaintiff would not have incurred *any* of the fees that rendered her delinquent without the wrongful towing charge.

### Recordation of an Overbroad Lien

29. On or about January 22, 2009, Oliveri, on behalf of Elvaton, recorded a lien against Plaintiff's condominium for "$1,111.12, plus all sums becoming due thereafter, including

but not limited to monthly assessments, special assessments, late fees, interest, attorneys' fees, costs of collection, fines, violations and nonsufficient funds fees." *See* Lien, attached hereto as Exh. A.

30. The lien states that it applies to purportedly delinquent assessments for the period of October 2008 through December 2008.

31. Elvaton's by-laws provide:

> All assessments, until paid, together with interest on them and actual cost of collection, constitute a lien on the units on which they are assessed, if a statement of lien is recorded within two years after the date the assessment becomes due. The lien shall be effective against a unit from and after the time a Statement of Condominium Lien is recorded among the Land Records of the County where the unit is located, stating the description of the unit, the name of the record Owner, the amount due and the period for which the assessment was due. . . . On full payment of the assessment for which the lien is claimed the Unit Owner shall be entitled to a recordable satisfaction of the lien.

*See* By-Laws, attached hereto as Exh. B, at pp. 20-21.

32. No later than September 19. 2011—and, in reality, significantly earlier—Plaintiff had paid off the assessments for October, November, and December 2008.

33. Pursuant to the terms of the By-Laws, Oliveri and Elvaton should have released the Lien by that time.

34. To the extent Plaintiff was delinquent on additional assessments after December 2008, Oliveri and Elvaton failed to timely file additional liens within two years of the due date of the subject assessments.

35. Oliveri regularly charged Plaintiff for "lien release fees" without taking any steps to release the lien, including in August 2017.

36. Oliveri has asserted as recently as March 2019 that the lien creates a perpetual security interest for all of Plaintiff's assessments, and charges and fees related thereto, rather

5

than just the October through December 2008 assessments and the charges and fees that relate to those months.

## Judgment and Satisfaction

37. On November 5, 2015, Oliveri, on behalf of Elvaton, filed a collection suit against Plaintiff in the District Court for Anne Arundel County. *Elvaton Towne Condominium, Regime II, Inc. v. Trice*, No. D-07-CV-15-011942.

38. On March 31, 2016, the state court entered a judgment against Plaintiff for $11,593.52, which included a principal amount of $7,617.66, prejudgment interest of $2,576.12, and attorney fees of $1,145.00.

39. The state court also approved 10% post-judgment interest.

40. Plaintiff made arrangements with Oliveri to pay down the judgment over time, and made five payments of $604.00 to Oliveri between May and December 2016.

41. In or around February 2017, Defendants sought and later obtained a Writs of Garnishment against Plaintiff's bank account and wages.

42. Though the bank garnishment was ultimately dismissed, Plaintiff had limited access to her bank account for several weeks.

43. Through the wage garnishment, in 2017, Oliveri collected 17 payments of $484.84 and one payment of $134.20.

44. At the end of 2017, Plaintiff had paid $11,696.48, to Oliveri for the judgment, and a balance of $938.62 purportedly remained.

45. Defendants sought an additional Writ of Garnishment in April 2018, but Plaintiff made the remaining payment before the writ was granted.

46. While Plaintiff was making the payments or being garnished, Oliveri failed to send her regular statements of account reflecting an updated balance, as required by Md. Code Ann., Comm. Law § 15-605(a).

47. Those few statements that Oliveri sent in response to requests from Plaintiff's counsel indicated wildly inconsistent accounting.

48. For example, a statement in August 2017 showed a remaining balance on the Judgment of $4,434.44, while a statement reflecting only about $1,200 in additional payments four months later showed a balance of $938.62.

49. Finally, on or about May 1, 2019, Defendants filed a Notice of Satisfaction of the Judgment.

## Unlawful Post-Judgment Collection

50. Notwithstanding the satisfaction of the judgment, Oliveri refused to release the lien.

51. During the time Oliveri was garnishing Plaintiff's wages, then-counsel for Plaintiff negotiated lump-sum payments of post-judgment assessments to be paid after the garnishment ended.

52. Plaintiff timely made the lump-sum payments, totaling $5,065 for only $2,340 in assessment, and has been making timely monthly payments to bring herself current on the assessments as of the time of filing.

53. Plaintiff is still required to make her payments through Oliveri.

54. As of March 2019, Defendants claim entitlement to "post-judgment amounts" of $9,101.02, with a total balance purportedly secured by the lien of $10,109.64.

55. The "post-judgment amounts" include $7,480.50 in attorney's fees, in addition to the attorney's fees that were included in the Judgment.

56. The attorney's fees claimed as "post-judgment amounts" do not relate to the October-December assessments that form the basis of the Lien.

57. Upon information and belief, neither the attorney's fees claimed as "post-judgment amounts" nor the bulk of the attorney's fees paid by Plaintiff are "actual costs of collection" as authorized by the By-Laws.

58. Nonetheless, in or around July 2019, Oliveri posted a Notice of Intent to Foreclose on the Lien on Plaintiff's door and continues to pursue collection.

## Damages

59. Oliveri's excessive and unlawful collection has made it impossible for Plaintiff to remain current on her other bills, resulting in late charges and significant damage to her credit.

60. Plaintiff has had difficulty affording groceries and has been unable to make necessary repairs to her home.

61. Plaintiff was also forced to withdraw her grandson from private school.

62. In addition, Plaintiff has emptied her retirement account—incurring tax penalties as a result—in order to meet at least some of her daily expenses while funneling large sums of money to Oliveri.

63. Oliveri's actions have caused Plaintiff severe emotional distress, manifest in symptoms including, but not limited to, loss of sleep, increased blood pressure, and anxiety.

## COUNT I
### Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

64. Plaintiff incorporates the allegations made in the foregoing paragraph as if set forth fully herein.

65. The amounts Oliveri currently seeks to collect may not be encompassed in the lien, as they do not relate to the October-December 2008 assessments.

66. Oliveri has not filed any timely new liens, and even if he did, nearly all of amounts he seeks to collect would be barred under Md. Code Ann., Real Prop. § 14-204(d)(2).

67. Oliveri violated 15 U.S.C. §§ 1692d(1) and 1692e(2), (4), (5), and (10) by pursuing debt collection and threatening to foreclose on a lien for amounts not authorized by Maryland law, any agreement, or the Elvaton By-Laws.

68. Oliveri further violated 15 U.S.C. §§ 1692e(2) and (10) by representing to Plaintiff that it had a valid security interest in the Condominium.

69. Oliveri further violated 15 U.S.C. §§ 1692d(1) and 1692e(2) and (10) by collecting a lien release fee when no lien was released.

70. Oliveri knew or should have known that it is not entitled to collect the fees and charges it seeks.  Its actions were, accordingly, willful.

71. Plaintiff is entitled to an award of actual and statutory damages and attorney's fees pursuant to 11 U.S.C. § 1692k.

## COUNT II
### Violation of the Maryland Consumer Debt Collection Act, Md. Code Ann. Comm. Law. § 14-201 *et seq.*

72. Plaintiff incorporates the allegations made in the foregoing paragraph as if set forth fully herein.

9

73. Oliveri violated Md. Code Ann. Comm. Law §14-202(8) by pursuing debt collection and threatening to foreclose on a lien for amounts not authorized by Maryland law, any agreement, or the Elvaton By-Laws.

74. Oliveri knew or recklessly disregarded the fact that no law, agreement, lien, or by-law entitled it to collect the amounts it continues to pursue from Plaintiff.

75. Oliveri further violated Md. Code Ann., Comm. Law. § 14-202(8) by garnishing Plaintiff's wages when it knew or should have known that it was prohibited from doing so without providing monthly statements pursuant to Md. Code Ann., Comm. Law. § 15-605(a).

76. Oliveri further violated Md. Code Ann., Comm. Law. § 14-202(8) by collecting a lien release fee without releasing any lien.

77. Oliveri violated Md. Code Ann., Comm. Law. § 14-202(11) by violating the Fair Debt Collection Practices Act., as set forth in Count I.

78. Oliveri acted with knowledge or reckless disregard for his legal entitlement to collect, and its actions were, accordingly, willful.

79. As a result of the above violations of the Maryland Code, Defendants are jointly and severally liable to the Plaintiff for actual and punitive damages and attorney's fees.

### COUNT III
### Unjust Enrichment

80. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81. From the time it began collecting from Plaintiff, Oliveri has billed Plaintiff for excessive fees and charges, causing her to incur additional fees and charges when the initial charges were unaffordable.

82. Plaintiff has paid far significantly more than the Assessments, and Oliveri is not entitled to any additional funds.

83. Olivery benefited from the payments made by Plaintiff in excess of the Assessments.

84. Plaintiff paid all monies owed for the Assessments and would not have incurred additional late fees and charges but for Oliveri's excessive fees.

85. Plaintiff's delinquency arose in the first instance because of a charge that was subsequently ruled unlawful.

86. The attorney's fees Oliveri charged to Plaintiff are excessive and disproportional to the Assessments.

87. It would, therefore, be inequitable to allow Oliveri to retain any payments in excess of Plaintiff's Assessments.

**88.** As a result of Oliveri's actions, Plaintiff suffered damages, including payment of attorney's fees and charges, and is entitled to recover the amounts of those charges.

## COUNT IV
### Declaratory Judgment

89. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully stated herein.

90. Since early 2009, Oliveri has routinely deemed Plaintiff delinquent on her Assessments, due almost entirely to attorney's fees and other charges..

91. Oliveri currently asserts a claim for approximately $10,000 and that a 2009 lien secures its interest.

92. Plaintiff should never have been forced into delinquency because of wrongful towing charges, and has repeatedly paid off the amount purportedly due to Oliveri.

93. An actual, present and justiciable controversy has arisen between Plaintiff and Oliveri concerning the existence of any outstanding balance and the applicability of the 2009 lien.

94. Plaintiff seeks declaratory judgment from this Court that she does not owe any additional money to Oliveri and that the lien has been satisfied and must be released.

**PRAYER FOR RELIEF**

WHEREFORE, to redress the injuries caused by Defendant's conduct as stated in the foregoing paragraphs, Plaintiff hereby requests the following relief:

- an award of actual damages pursuant to 15 U.S.C. § 1692k and Md. Comm. Law Ann. §§ 14-203;
- award of statutory damages pursuant to 15 U.S.C. § 1692k;
- for an award of punitive damages;
- for an award of costs of litigation and reasonable attorney's fees pursuant to the 15 U.S.C. § 1692k, 15 U.S.C. § 1681(n)(3)and Md. Comm. Law Ann. § 13-408;
- an award of compensatory damages based on Oliveri's common law violations;
- enter judgment according to the declaratory relief sought;
- an award of costs for the declaratory judgment action;
- an award of pre-judgment and post-judgment interest; and
- for such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all claims so triable.

Dated:  Washington, D.C.                             Respectfully submitted on behalf of Plaintiff,
       November13, 2019

                                          */s/ Courtney L. Weiner*
                                          Courtney L. Weiner (#19463)
                                        Law Office of Courtney Weiner PLLC
                                        1629 K Street NW, Suite 300
                                        Washington, DC 20006
                                        PH: 202-827-9980
                                        cw@courtneyweinerlaw.com

                                        Elizabeth L. Morris
                                        Adams, Morris and Sessing
                                        12850 Middlebrook Road, Suite 308
                                        Germantown, MD 20874
                                        PH: 301-637-0143
                                        lee@amslawgroup.com


                                        *Attorney for Plaintiff*