IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WENDY TRICE,

    Plaintiff,

v.

OLIVERI & ASSOCIATES, LLC,

    Defendant.

Civil Action No.: GLR-19-3272

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Oliveri & Associates, LLC's ("Oliveri") Motion to Dismiss Plaintiff Wendy Trice's Complaint, or, in the Alternative, for Summary Judgment (ECF No. 12). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[1]

### A.    2009 Lien

In May 2007, Trice purchased a condominium in the Elvaton Towne Condominium Regime II ("Elvaton") in Glen Burnie, Maryland. (Compl. ¶¶ 8–9, ECF No. 1). Pursuant to Elvaton's By-Laws, Trice and all other Elvaton homeowners were required to pay monthly condominium assessments to cover the cost of building maintenance, property taxes, water and sewage fees, and other communal expenses. (See Compl. Ex. B ["By-

---

[1] Unless otherwise noted, the Court takes the following facts from Trice's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Laws"] at 16–18, ECF No. 1-2). The By-Laws also authorized Elvaton to use late fees, liens, and legal action to recover past-due assessments. (Id. at 20–23).

In August 2008, Trice was unable to pay her $180 assessment because Elvaton towed her car from the community's parking lot earlier that month, costing her approximately $200 in towing fees. (Compl. ¶¶ 11–14). Trice subsequently fell three months behind in her assessment payments. (Id. ¶¶ 13–14).

Oliveri, a Maryland-based collections agency, attempted to collect Trice's past-due assessments on behalf of Elvaton. (Id. ¶¶ 3–4, 14). On January 22, 2009, Oliveri recorded a lien (the "2009 Lien") against Trice's condominium for delinquent assessments that had accrued from October 2008 to December 2008. (Id. ¶¶ 29–30). The 2009 Lien totaled "$1,111.12, plus all sums becoming due thereafter, including but not limited to monthly assessments, special assessments, late fees, interest, attorneys' fees, costs of collection, fines, violations and nonsufficient funds fees." (Id. ¶ 29; see also Compl. Ex. A ["2009 Lien"] 2, ECF No. 1-1).[2]

## B.    2015 Lawsuit and 2016 Judgment

On November 5, 2015, Oliveri, on behalf of Elvaton, brought a collection suit against Trice in the District Court for Anne Arundel County, Maryland. (Compl. ¶ 37). Following a trial on the merits, the state court entered a judgment against Trice on March 31, 2016 for $11,593.52 (the "2016 Judgment"), which included a principal amount of

---

[2] Citations to the 2009 Lien refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

$7,617.66, pre-judgment interest of $2,576.12, and attorney fees of $1,145.00. (Id. ¶ 38). The court also awarded 10% in post-judgment interest. (Id. ¶ 39).

Pursuant to a payment arrangement and through wage garnishment, Trice paid Oliveri $11,696.48 by the end of 2017. (Id. ¶¶ 40–44). In April 2018, Trice allegedly owed an additional $938.62, which she eventually paid. (Id. ¶¶ 44–45).

On or about May 1, 2019, Oliveri filed a Notice of Satisfaction of the 2016 Judgment. (Id. ¶ 49). Despite satisfaction of the 2016 Judgment, Oliveri refused to release the 2009 Lien. (Id. ¶ 50). Oliveri collected an additional $5,065.00 from Trice in post-judgment assessments, (id. ¶¶ 51–52), though it is unclear from the Complaint when those "timely" payments occurred. (Id. ¶ 52).

As of March 2019, Oliveri claims entitlement to post-judgment amounts of $9,101.02, with a total balance purportedly secured by the 2009 Lien. (Id. ¶ 54). The amounts include $7,480.50 in attorney's fees that were included in the 2016 Judgment. (Id. ¶ 55). Oliveri posted a Notice of Intent to Foreclose on the Lien on Trice's door in or around July 2019 and continues its efforts to collect the post-judgment fees. (Id. ¶ 58).

**C.**   **Procedural History**

On November 13, 2019, Trice filed suit against Oliveri alleging: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. (Count I); violation of the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann. Com. Law § 14-201 et seq. (Count II); unjust enrichment (Count III); and declaratory judgment (Count IV). (Compl. ¶¶ 64–94, ECF No. 1). Trice seeks damages, litigation costs and attorney's fees, pre- and post-judgment interest, and declaratory relief. (Id. at 12).

3

Oliveri filed a Motion to Dismiss on January 6, 2020. (ECF No. 12). On February 3, 2020, Trice filed an Opposition. (ECF No. 17). Oliveri filed a Reply on February 18, 2020. (ECF No. 18).

## II.    DISCUSSION

### A.    <u>Conversion</u>

Oliveri's Motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). <u>See</u> <u>Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.</u>, 788 F.Supp.2d 431, 436–37 (D.Md. 2011), <u>aff'd</u>, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" <u>Wells-Bey v. Kopp</u>, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and reasonable opportunity for discovery.  <u>See</u> <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters

4

outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 463 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, converting a 12(b)(6) motion to a motion for summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citing Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation and internal quotation marks omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation

marks omitted) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods Ltd., 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movant's failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (internal quotations omitted) (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C.Cir. 1988)).

Here, Trice contends that it would be premature to construe Oliveri's Motion as one for summary judgment because she has not had a reasonable opportunity for discovery. To support her position, Trice submitted a Rule 56(d) declaration from her counsel, Courtney L. Weiner, requesting discovery concerning: (1) alleged accounting discrepancies among financial records provided by Oliveri, Elvaton, Trice, and Trice's bank; (2) whether Oliveri had a basis for assessing "insufficient funds" charges; (3) if and when Oliveri collected a lien release fee; (4) the basis for Oliveri's fees, including whether they arise from a

proceeding in which attorney's fees were not granted and the overall reasonableness of the fees; (5) Trice's compliance with Oliveri's payment plans; (6) whether Oliveri received any payments directly from Trice and the extent to which it retained any indirect payments; (7) how Trice's payments were disbursed and applied to her alleged debts; and (8) Oliveri's knowledge and intent in its collection practices. (See Weiner Decl. ¶¶ 4–22, ECF No. 17-2).

Some of the items listed in the Weiner Declaration may not be material to Trice's claims, but Trice is entitled to any discovery relevant to her claims. See Hunt Valley Baptist Church, Inc. v. Baltimore Cty., No. ELH-17-804, 2017 WL 4801542, at *17 (D.Md. Oct. 24, 2017) (declining to convert the defendants' motion because "[a]lthough it may not be necessary for plaintiff to explore each of its proposed discovery topics, . . . plaintiff is entitled to conduct discovery relevant to its claims").

Accordingly, the Court concludes that Trice's Rule 56(d) affidavit sufficiently establishes that discovery is necessary. As a result, the Court will not convert the Motion and will construe it as a motion to dismiss.

**B.**   **Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (internal quotations omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state

a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (citing Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## C.   Analysis

### 1.   FDCPA Claim (Count I)

The FDCPA is a strict liability statute that safeguards consumers from abusive, coercive, and deceptive debt collection practices by debt collectors. See 15 U.S.C. §

1692k(a); Spencer v. Hendersen–Webb, Inc., 81 F.Supp.2d 582, 590–91 (D.Md.1999) (citing United States v. Nat'l Fin. Servs. Inc., 98 F.3d 131, 135 (4th Cir.1996)). To state a claim under the FDCPA, a plaintiff must allege that: (1) "the plaintiff has been the object of collection activity arising from consumer debt"; (2) "the defendant is a debt [ ] collector as defined by the FDCPA"; and (3) "the defendant has engaged in an act or omission prohibited by the FDCPA." Sterling v. Ourisman Chevrolet of Bowie Inc., 943 F.Supp.2d 577, 585 (D.Md. 2013) (alteration in original) (citation and internal quotation marks omitted). For purposes of the FDCPA, "debt collectors" are entities that "regularly collect or attempt to collect, directly or indirectly, [consumer] debts owed or due another." Heintz v. Jenkins, 514 U.S. 291, 294 (1995) (quoting 15 U.S.C. § 1692a(6)).

Neither party disputes that Trice was subject to collection activity related to a consumer debt or that Oliveri is a debt collector as defined by the FDCPA. However, the parties disagree as to the legality of Oliveri's debt collection practices. Trice alleges that Oliveri employed three distinct debt collection practices that violated various provisions of the FDCPA. First, Trice asserts that Oliveri violated §§ 1692d(1) and 1692e(2), (4), (5), and (10) by pursuing debt collection and threatening to foreclose on the 2009 Lien for amounts not authorized by Maryland law, any agreement, or the Elvaton By-Laws. Second, Trice alleges that Oliveri also violated §§ 1692e(2) and (10) by representing that it had a valid security interest in her home. Third, Trice contends that Oliveri collected a lien release fee without releasing the 2009 Lien in violation of §§ 1692d(1) and 1692e(2) and (10).

Oliveri argues that all of these allegations are barred by FDCPA's statute of limitations and, alternatively, that Trice has failed to state a claim upon which relief may be granted. The Court considers each argument in turn.

### i.      Statute of Limitations

Wrongful debt collection claims brought under the FDCPA must be filed within one year of the alleged violation. 15 U.S.C. § 1692k(d). Oliveri argues that Trice's claim is time barred, because FDCPA's statute of limitations began to run at the time the alleged violations occurred, and that multiple alleged violations of the FDCPA of the same type do not toll the limitations period. In support thereof, Oliveri attaches several correspondences to its Motion, purporting to establish that it began communicating with Trice years before this lawsuit in an attempt to recoup past-due assessments, collection costs, and attorney's fees. This argument fails on two grounds.

Procedurally, the Court may not consider the correspondences attached to Oliveri's Motion without converting it to one for summary judgment, which the Court declines to do in light of Trice's discovery requests. At the motion to dismiss phase, the Court may dismiss claims as time barred only when "it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run." Litz v. Md. Dep't of Env't, 76 A.3d 1076, 1086 (Md. 2013); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). It is not clear from the Complaint that Trice's FDCPA claim is barred by the statute of limitations.

The Complaint alleges that Oliveri threatened to foreclose on Trice's home in or around July 2019 even though Trice allegedly satisfied both the 2009 Lien and 2016

Judgment, and that Oliveri continues to pursue its collection efforts against her. Because Trice's Complaint was filed on November 13, 2019, this conduct falls squarely within FDCPA's one-year statute of limitations. Next, the Complaint alleges that Oliveri asserted that it had a valid security interest in Trice's home when no such interest existed. However, this allegation is not tethered to a specific communication or event, and it is unclear when Oliveri made this representation. Because it is unclear from the face of the Complaint when this conduct occurred, the Court declines to dismiss this allegation as time barred. Lastly, Trice asserts that Oliveri "regularly" charged her for lien release fees without taking any steps to release the 2009 Lien. (Compl. ¶ 35). Again, it is unclear from the Complaint when this conduct occurred, but Trice's use of the word "regularly" is enough to save this allegation from dismissal at this stage.

Substantively, the Court disagrees with Oliveri's argument given the Fourth Circuit's recent ruling in Bender v. Elmore & Throop, P.C., No. 19-1325, 2020 WL 3579859 (4th Cir. July 2, 2020). In Bender, plaintiffs began receiving letters and phone calls in April 2016 from a law firm that had been retained by their homeowner's association to collect assessments that plaintiffs allegedly owed. 2020 WL 3579859, at *1. Although plaintiffs provided proof that the assessments had been paid, the law firm asserted that plaintiffs owed attorney's fees and collection costs. Id. Plaintiffs disputed the debt and, in May 2016, asked the law firm to stop contacting them; nonetheless, the law firm continued its collection efforts for the next two years, culminating with a threat to obtain a lien against plaintiff's home in January 2018. Id.

Three months later, plaintiffs filed an FDCPA action against the law firm, but the district court dismissed their complaint as time barred, holding that the FDCPA's limitations period began to run in 2016, and that later violations of the same type did not trigger a new limitations period. Id. The Fourth Circuit reversed, concluding that the FDCPA "establishes a separate one-year limitations period for each violation," as "nothing in the FDCPA suggests that 'similar' violations should be grouped together and treated as a single claim for purposes of the FDCPA's statute of limitations." Id. In so holding, the Fourth Circuit resolved a split among judges in this District regarding the accrual of claims under the FDCPA. Compare, e.g., Bey v. Shapiro Brown & Alt, LLP, 997 F.Supp.2d 310, 316 (D.Md. 2014) (Grimm, J.), aff'd, 584 F.App'x 135 (4th Cir. 2014) (holding that multiple communications in violation of the FDCPA constitute a single, continuing violation that accrues at the time of the first debt collection communication), with Mitchell v. U.S. Bank Nat'l Ass'n as Tr. for Mastr Asset Backed Sec. Tr. 2005-FRE1, No. TDC-19-2225, 2020 WL 3050739, at *9 (D.Md. June 8, 2020) (Chuang, J.) (concluding that each communication is a discrete FDCPA violation that accrues when the communication is sent).

At bottom, it is unclear on the face of the Complaint if Trice's FDCPA claim is time barred. Moreover, the Fourth Circuit recently rejected the statute of limitations argument Oliveri advances. Accordingly, the Court will not dismiss Trice's FDCPA on timeliness grounds.

### ii.      Sufficiency of FDCPA Claims

#### a.      15 U.S.C. § 1692d(1)

Section 1692d(1) makes it unlawful for a debt collector to use or threaten "violence or other criminal means to harm the physical person, reputation, or property of any person" while attempting to collect a debt. 15 U.S.C. § 1692d(1).

Trice's Complaint does not allege any facts suggesting that Oliveri employed tactics prohibited by § 1692d(1) while attempting to collect the sums allegedly owed to Elvaton. The Court concludes that Trice has failed to state a claim for which relief may be granted under § 1692d(1), and this claim will be dismissed without prejudice.

#### b.      15 U.S.C. § 1692e(2) and (10)

Under § 1692e(2), a debt collector is prohibited from making false representations regarding either "the character, amount, or legal status of any debt; or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Relatedly, § 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

In alleging that Oliveri violated, at a minimum, §§ 1692e(2) and (10) by "pursuing debt collection and threatening to foreclose on a lien for amounts not authorized by Maryland law, any agreement, or the Elvaton By-Laws," (Compl. ¶ 67), Trice is presumably challenging Oliveri's attempts to collect $7,480.50 in post-judgment attorney's fees, which she alleges are unrelated to either the debt secured by the 2009 Lien or the $1,145.00 in attorney's fees awarded as part of the 2016 Judgment.

13

The Court notes that this allegation is premised, in part, on an assumption that the 2009 Lien secured only those sums related to the past-due assessments that accrued from October 2008 to December 2008. Indeed, Trice asserts that Oliveri should have recorded a new lien against her home within two years of any subsequent assessments, collection costs, and related fees becoming due. Conversely, Oliveri argues that it was not obligated to file additional liens against Trice's property to collect amounts becoming due after December 2008 because it secured a "continuing property lien" against Trice's home; Oliveri asserts that such liens are valid under Archie v. Nagle & Zaller, P.C., No. GJH-17-2524, 2018 WL 3475429, at *6 (D.Md. July 19, 2018), aff'd, 790 F.App'x 502 (4th Cir. 2019). Guided by this Court's ruling in Archie, the Court finds it prudent to first identify the scope of the 2009 Lien before addressing the sufficiency of Trice's FDCPA claim under §§ 1692e(2) and (10).

In Archie, a debt collector recorded "continuing liens" against the plaintiffs' homes, which purported to secure "additional fines, late fees, interest, costs of collection and attorney's fees . . . as permitted by the Association's governing documents, that may come due after the date [the] lien was drafted. Said amount may increase or decrease to account for intervening payments . . . or judgments obtained." Id. at *5 (citation omitted). The plaintiffs alleged that the liens violated the FDCPA and MCLA because they included "unknown future sums." Id. This Court disagreed, holding that "the inclusion of the continuing lien clause does not constitute a violation of the FDCPA" and that "[t]he MCLA does not expressly permit or prohibit a judgment creditor from filing a 'continuing lien' whose amount may increase or decrease." Id. at *6. The Court noted that "the continuing

14

lien clause was a fair and accurate representation of the housing association's rights to collect additional sums from [p]laintiffs" as provided in the governing documents, and that the liens did not seek to collect fees not specifically provided for in those governing documents. Id.

Unlike the continuing lien in Archie, the 2009 Lien purports to secure debts that exceed those authorized by Elvaton's By-Laws. The 2009 Lien provides in relevant part:

> [T]he described property is subject to a lien . . . as of January 14, 2009, in the total amount of $1,111.12, plus all sums becoming due thereafter, including but not limited to monthly assessments, special assessments, late fees, interest, attorneys' fees, costs of collection, fines, violations and non-sufficient fund fees. This sum represents a share of common expenses of the condominium . . . which are unpaid and delinquent for October 2008 to December 2008 totaling $540.00, late charges in the amount of $54.92, interest bearing thereon at the rate of 18% per annum totaling $16.20 as of January 14, 2009, as well as reimbursement of expenses incurred in efforts to collect fees due which expenses total $500.00 and include reasonable attorney's fees, less payments received in the amount of $200. The recovery of these sums are provided for in the By-Laws."

(2009 Lien at 1) (emphasis added). However, the By-Laws only allow for the imposition of a lien to secure "[a]ll assessments, until paid, together with interest on them and actual cost of collection . . .  if a statement of lien is recorded within two years after the date the assessment becomes due." (By-Laws at 20) (emphasis added). The lien is effective from and after the date the lien is recorded and must identify, among other information, "the amount due and the period for which the assessment was due." (Id.) (emphasis added). The debtor is entitled to recordation of satisfaction of the lien "[o]n full payment of the assessment for which the lien is claimed." (Id. at 20–21).

Here, the debt allegedly secured by the 2009 Lien is substantially broader than that authorized under Elvaton's By-Laws. The By-Laws permitted Oliveri to record a lien against Trice's home for failure to pay assessments that accrued during a specific period—October 2008 to December 2008—within two years after those assessments became due. The By-Laws also permitted Oliveri to recoup interest on, and collection costs associated with, those 2008 assessments. Once Trice paid that debt, together with the cost of collections and related fees, she was entitled to a release of the 2009 Lien.

To the extent Trice failed to pay assessments and related fees after December 2008, the By-Laws authorized Oliveri to obtain a new lien against Trice's property within two years of such assessments and fees becoming due. Thus, contrary to Oliveri's assertions and statements in the 2009 Lien, the By-Laws did not allow Oliveri to collect "monthly assessments" and "special assessments" becoming due after imposition of the 2009 Lien. Relatedly, Oliveri was not authorized under the By-Laws to seek payment for collection costs unrelated to the collection of the 2008 assessments, including attorney's fees, becoming due after imposition of the 2009 Lien.[3] Thus, Oliveri's alleged attempt to collect

---

[3] The 2016 Judgment, which included only $1,145.00 in attorney's fees, was not secured by the 2009 Lien for the same reasons. Further underscoring this point is language in the 2016 Judgment, authorizing Oliveri to "file for a lien on any real property owned by [Trice] to enforce this judgment." (Def.'s Mot. Dismiss Ex. 14 ["2016 Judgment"], ECF No. 12-15).

In relying upon a document attached to Oliveri's Motion, the Court acknowledges that, as a general rule, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion without converting it to a motion for summary judgment. Fed.R.Civ.P. 12(d); see also Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. Of relevance here is the exception allowing the Court to consider matters of public record, including state court records. Philips v. Pitt Cty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir.

post-judgment attorney's fees, based on representations that the fees were secured by the 2009 Lien, constitutes a violation of the FDCPA. See Jackson v. Sagal, 370 F.Supp.3d 592, 601 (D.Md. 2019) ("The FDCPA prohibits attempts to collect nonexistent debt, including attorney's fees.").

In sum, while a "continuing lien" is permissible under the FDCPA, Trice plausibly alleges that Oliveri was not authorized to create such a lien against her property based on Elvaton's By-Laws. Thus, in alleging that Oliveri attempted to collect $7,480.50 in post-judgment attorney's fees by representing that such fees were secured by the 2009 Lien or related to the 2016 Judgment, Trice has stated a claim against Oliveri for violation of §§ 1692e(2) and (10).[4] Accordingly, the Court will deny Oliveri's Motion as to these claims.

### c. 15 U.S.C. § 1692e(4) and (5)

A debt collector violates 15 U.S.C. § 1692e(4) if he represents or implies that failure to pay the debt "will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." Similarly, 15 U.S.C.

---

2009) (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004); see also Wittholn v. Fed. Ins. Co., 164 F.App'x 395, 397 (4th Cir. 2006) (per curiam) (concluding that state court records are public records of which a federal district court may take judicial notice). Here, Oliveri attached to its Motion to Dismiss a copy of the 2016 Judgment entered against Trice, which is a publicly available court record. Accordingly, the Court may consider that record without converting the Motion to one for summary judgement.

[4] In alleging that Oliveri regularly charged her a lien release fee without releasing the 2009 Lien, Trice also states a claim for violation of §§ 1692e(2) and (10), as Oliveri arguably inflated Trice's alleged debt in an attempt to recoup compensation for an action that it had no intention of undertaking, namely releasing the 2009 Lien.

§ 1692e(5) prohibits a debt collector from threatening any action that cannot be legally taken.

Here, Trice alleges that Oliveri threatened to foreclose on her home in 2019 while attempting to collect post-judgment attorney's fees that were not secured by the 2009 Lien or part of the attorney's fees awarded in the 2016 Judgment. For the reasons stated above, Trice has alleged sufficient facts to survive dismissal of her FDCPA claim arising under §§ 1692e(4) and (5).

### 2.    MCDCA Claim (Count II)

Under the MCDCA a debt collector may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Stewart v. Bierman, 859 F.Supp.2d 754, 769 (D.Md. 2012) (quoting Md. Code Ann. Com. Law § 14-202(8)), aff'd sub nom., Lembach v. Bierman, 528 F.App'x 297 (4th Cir. 2013). The MCDCA explicitly requires a plaintiff to allege that the defendant acted with knowledge as to the invalidity of the debt. Id.

Here, Trice's MCDCA claim fails because it merely recites the statutory language. The Complaint alleges that Oliveri "acted with knowledge or reckless disregard for his legal entitlement to collect, and its actions were, accordingly, willful." (Compl. ¶ 78). Trice's claim fails to allege facts sufficient to state a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 570. Accordingly, the Court will dismiss Trice's MCDCA claim without prejudice.

### 3.        Unjust Enrichment Claim (Count III)

Trice alleges that "Oliveri has billed [her] for excessive fees and charges, causing her to incur additional fees and charges when the initial charges were unaffordable." (Compl. ¶ 81). She characterizes the fees as "excessive and disproportional to the Assessments" and asserts that Oliveri should not be allowed "to retain any payments in excess of [her] Assessments." (Id. ¶¶ 86–87). The Court is not persuaded.

To allege unjust enrichment, the plaintiff must establish (1) that she conferred a benefit upon the defendant; (2) an "[a]ppreciation or knowledge by the defendant of the benefit"; and "[a]cceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value or the return of money, if money is improperly withheld." Jason v. Nat'l Loan Recoveries, LLC, 134 A.3d 421, 431 (Md.Ct.Spec.App. 2016) (quoting Paul Mark Sandler & James K. Archibald, Pleading Causes of Action in Maryland § 2.37 at 166 (5th ed. 2013)).

Trice has not alleged facts demonstrating that she conferred a benefit on Oliveri, and her argument is premised on a misunderstanding of Oliveri's role in the debt collection process. To be clear, Trice was indebted to Elvaton, who retained Oliveri to collect the debt on Elvaton's behalf. Oliveri was merely the conduit through which Trice paid Elvaton. Elvaton incurred attorney's fees because it was obligated to compensate Oliveri for Oliveri's collection efforts. Elvaton, in turn, sought reimbursement of those attorney's fees and other collection costs from Trice. Consequently, Elvaton was—and still is—the entity benefiting from Trice's payments to Oliveri, which covered the debt secured by the 2009

19

Lien, the sum awarded in the 2016 Judgment, and the fees Elvaton incurred by retaining Oliveri to collect Trice's debt. As pleaded, Trice has not conferred a benefit upon Oliveri. Accordingly, Trice has failed to state a claim for unjust enrichment, and the claim will be dismissed without prejudice.

### 4.    Declaratory Judgment (Count IV)

Trice seeks declaratory judgment as to the validity and continuing nature of the 2009 Lien and seeks to have this Court declare that "she does not owe any additional money to Oliveri and that the [2009] [L]ien has been satisfied and must be released." (Compl. ¶¶ 91, 93–94). However, declaratory judgment is not available under the FDCPA or the MCDCA. See Altenburg v. Caliber Home Loans, Inc., No. RDB-16-3374, 2017 WL 2733803, at *7 (D.Md. June 26, 2017) (citation omitted) ("This Court, as defendants note, has repeatedly rejected claims for declaratory relief premised on violations of the FDCPA, MCDCA, and MCPA."). Accordingly, Trice's request for declaratory judgment is denied, and the claim is dismissed with prejudice.

## III.    CONCLUSION

For the foregoing reasons, Oliveri's Motion to Dismiss Plaintiff Wendy Trice's Complaint, or, in the Alternative, for Summary Judgment (ECF No. 12) will be granted in part and denied in part. Oliveri's Motion will be granted as to the FDCPA claims arising under 15 U.S.C. § 1692d(1) (Count I), violation of the MCDCA (Count II), unjust enrichment (Count III), and declaratory judgment (Count IV) for failure to state a claim. Oliveri's Motion is denied as to FDCPA claims arising under §§ 1692e(2), (4), (5), and (10) (Count I). A separate Order follows.

Entered this 14th day of August, 2020.

                                   /s/
                              George L. Russell, III
                              United States District Judge